IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS NELLIS, | : | |
| | : | |
| *Plaintiff*, | : | Civil Action No.: 2:24-cv-00596 |
| | : | |
| v. | : | |
| | : | |
| UPMC, | : | |
| | : | |
| *Defendant*. | : | |

## COMPLAINT

AND NOW, comes the Plaintiff, Francis Nellis, by and through his undersigned counsel, Sean A. Casey, Esquire, and files the following Complaint.

## Nature of the Action

This is an action brought for Age Discrimination in Employment Act of 1967 (ADEA), the Americans with Disabilities Act Amendments Act (ADAAA), as amended, 42 U.S.C. §12101 *et seq.*, the Family Medical Leave Act 29 U.S.C. §2601 (FMLA), the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S.A. §19, *et seq.*, as well as for retaliation under the various statutes, and the creation of a hostile work environment. The Plaintiff, Francis Nellis, seeks declaratory, injunctive, and compensatory relief for the discriminatory conduct, retaliation, and the hostile work environment he endured, and for being terminated from his position by the Defendant in this matter.

**Parties**

1. Plaintiff, Francis Nellis, is a male individual of approximately seventy-one (71) years of age, and resides at 5715 Beacon Street, No.208, Pittsburgh, Pennsylvania 15217.

2. At all times relevant hereto, the Plaintiff was a qualified individual, and otherwise possessed of all qualifications necessary to perform the essential functions of the job.

3. Defendant, UPMC, is an employer within the meaning of the Act, with over fifty (50) employees, and headquartered in Pennsylvania, with a place of business at 339 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §1331, 1343, and 1367.

   A. Also, pursuant to 28 U.S.C. 1334 (3) and (4), which gives the district court's jurisdiction over actions to secure civil rights extended by the United States government.

   B. Also, pursuant to 28 U.S.C. §1367 giving the district court jurisdiction over state law claims.

5. This action arises in part under 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991, and 42 U.S.C. §1981(a).

6. The Court may also maintain supplemental jurisdiction over state law claims set forth herein (or later added) pursuant to 28 U.S.C. §1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

7. Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b)(c).

**Statement of Facts**

8. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

9. Mr. Francis Nellis first began working for UPMC in 2018 as a contractor in the job position of technical writer-CRP IT.

10. UPMC then asked him to convert from being a contractor to a fulltime employee, which he had accepted, and his status changed on or about August 10, 2020.

11. The Plaintiff had not received an evaluation at this point, but obviously the Defendant was extremely pleased with his performance as a technical writer to have offered him the full-time position on the core systems technical writing team.

12. His first performance evaluation was for the period of January 1, 2021 through December 31, 2021, and he was recognized as a good performer to superior performer.

13. While working for the Defendant, the Plaintiff had a history of excellent work performance and no reprimands, prior to his last manager.

14. In June of 2022, the core systems technical writing team was transferred to a manager named Lisa Westwood.

15. The Plaintiff asserts that his new manager, Ms. Westwood, had an expressed interest in hiring younger individuals.

16. In or around July of 2022, the Plaintiff began working with Ms. Westwood as his immediate supervisor.

17. He was in a group with four (4) other individuals, all in their 40's or older.

18. He advised her when this began that he had a prearranged surgery taking place on July 5, 2022.

19. He did in fact take leave to get that surgery and was unable to work until about mid-July of 2022.

20. After the Plaintiff returned to work, two of his colleagues, both in their 50's and 60's, resigned their positions within that department due to Ms. Westwood's antics.

21. Almost as soon as he began working with his new supervisor, he began to suffer comments such as, "Are you sure this is something that you still want to do?"

22. She would also make comments like, "you are being forgetful," and "you are slurring your words."

23. Also, upon his return, the Plaintiff began to experience what he describes as hypervigilant and hypercritical attention to the way in which he performed his job responsibilities.

24. The Plaintiff felt that he was being singled out in this respect, as he was not aware of any other coworkers being addressed for their mannerisms.

25. Having received these comments, the Plaintiff did advise Ms. Westwood that he was diagnosed with sleep apnea and was in the process of securing a CPAP machine to aid in his ability to sleep throughout the night.

26. On or about August 29, 2022, the Plaintiff met with Leonard Stein, a former manager of his, and complained of the treatment from Ms. Westwood and asked for advice.

27. Mr. Stein recommended that the Plaintiff's issues be reported to Ms. Westwood's mangers, Angela Carman and Kristy Walczak.

28. On or about August 31, 2022, the Plaintiff met with Ms. Carman and Ms. Walczak and though they acknowledged his concerns, nothing changed after the meeting.

29. In November of 2022, the Plaintiff suffered an injury where he slipped and fell, causing him to spend some time at a rehab facility and be on medical leave for about two weeks.

30. Shortly after he returned to work, his immediate supervisor placed him on a performance improvement plan (hereinafter "PIP"), indicating that if he did not meet the vague guidelines of the plan he would be terminated.

31. The PIP was dated December 15, 2022.

32. Among certain allegations in the PIP were that the Plaintiff was unprofessional and argumentative.

33. This was directly contradicted by feedback provided to the Plaintiff in his annual evaluation from another member of the management team on or about December 8, 2021.

34. Among other positive comments, Ms. Amber Emery indicated, "Frank works well with his team members. He is friendly and enjoys learning about others. He is a great addition to the Documentation team."

35. These comments about observations made during the transitioning of his team are a direct contradiction of the allegations made by Ms. Westwood in the PIP.

36. The Plaintiff maintains that all of these factors point to the fact that the expressed reasons for his termination were pretextual, and that the actual reason for his termination was his age, medical conditions, and use of leave.

37. In the "areas of improvement" section of the PIP is a directive to "speak clearly."

38. Not only does this suggest his manager was mocking his speech impediment, but it was a criticism that was not an issue for at least two other persons evaluating him during the relevant time period.

39. The Plaintiff was terminated on January 30, 2023.

40. The Plaintiff believes these actions are discriminatory and retaliatory on behalf of the employer and seeks redress of his rights.

41. The Plaintiff filed a Charge with the EEOC on or about June 13, 2023.

42. The Plaintiff received his Notice of Right to Sue letter on or about January 23, 2024. (Exhibit 1).

## **COUNT I: AGE DISCRIMINATION- ADEA & PHRA**

43. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

44. Plaintiff was seventy (70) years of age when terminated by the Defendant.

45. Plaintiff avers that Ms. Westwood was hypervigilant and hypercritical of his mannerisms and the way he performed his job responsibilities, and she treated him differently that the younger employees.

46. Ms. Westwood made discriminatory comments to the Plaintiff including, "Are you sure this is something you still want to do?"

47. Ms. Westwood also stated the following to Plaintiff, "you are being forgetful," and "you are slurring your words."

48. Plaintiff avers that he was also treated differently, in that employees younger than him were not treated as severely for offenses that were as severe or ever more so.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in his favor and against the Defendant, and award him damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages,

declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## **COUNT II: DISABILITY DISCRIMINATION: ADAAA & PHRA**

49. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

50. The Defendant employer expressed discriminatory animus and committed discriminatory acts against the Plaintiff in violation of the Americans with Disabilities Act Amendment Act, as amended 42 U.S.C. §12010 et. seq., and the Pennsylvania Human Relations Act, 43 P.S. §951 *et. seq*.

51. The Plaintiff had been diagnosed with sleep apnea, a speech impediment, and had a slip and fall injury that required care at a rehabilitation facility, making him disabled within the meaning of the ADAAA, this definition would include regarding as or having a history of disability.

52. The Defendant was made aware of these disabilities, and accommodations were requested by the Plaintiff as a result of said medical conditions.

53. The Defendant's actions were done with malice or reckless disregard of Plaintiff's federally protected rights.

54. Plaintiff avers that Ms. Westwood was hypercritical of his diagnosed medical conditions and the way he performed his job responsibilities, and she treated him differently than other employees.

55. Ms. Westwood made discriminatory comments to the Plaintiff including, "Are you sure this is something you still want to do?"

56. Ms. Westwood also stated the following to Plaintiff, "you are being forgetful," and "you are slurring your words."

57. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer, lost wages and benefits, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in his favor and against the Defendant, and award him damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT III: RETALIATION: ADAAA, ADEA, FMLA, & PHRA

58. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

59. Plaintiff advised and discussed his medical conditions, requested accommodations, need for leave, and rights to be free of discrimination on multiple occasions with the Defendant, which constituted protected activity under the ADAAA, ADEA, FMLA, and PHRA.

60. As a result, Plaintiff was harassed, humiliated, and discriminated against by the Defendant in retaliation for the disclosure of his medical conditions, and the assertion of his rights under the ADAAA and PHRA.

61. The Plaintiff experienced ongoing harassment in the workplace from individuals concerning his complaints and requested accommodations.

62. Under the ADAAA and PHRA, a retaliatory action by an employer toward an employee for exercising their statutory rights is a violation of that statute and against public policy.

63. Plaintiff was harassed, humiliated, and discriminated against by the Defendant in retaliation for asserting his rights under the ADAAA, ADEA, FMLA, and PHRA by raising the issues regarding the discrimination he endured.

64. The chronology of events in this matter demonstrates clear evidence that the conduct of the Defendant was done in retaliation for use of FMLA, and complaints by the Plaintiff, which have drawn attention and focus to the discriminatory acts of the Defendant.

65. Not only did the Defendant not take measures to correct the discriminatory nature of their criteria, but they engaged in activities to question, discipline, and terminate the Plaintiff.

66. The Plaintiff exercised rights and opposed discriminatory conduct prohibited by the ADAAA, ADEA, FMLA and PHRA.

67. Defendant's conduct in retaliation for Plaintiff's complaints constitutes unlawful retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. Section 2000e-.

68. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress, and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in his favor and against the Defendant, and award him damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT IV: HOSTILE WORK ENVIRONMENT

69. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

70. Plaintiff had reported discrimination to the Defendant, to various agents employed by the Defendant.

71. The Plaintiff had experienced ongoing harassment in the workplace from Ms. Westwood concerning his medical conditions, age, complaints and requested accommodations.

72. As described above, Defendant subjected the Plaintiff to a hostile work environment on the basis of his age and disability.

73. Plaintiff maintains that Defendant's acts are intentional and retaliatory, and created a hostile work environment in response to the Plaintiff's assertion of his rights under the ADEA, ADAAA, FMLA, and PHRA.

74. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in his favor and against the Defendant, and award him damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

A) Grant a permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert and participation with them, from engaging in, ratifying, or refusing to correct, employment practices which interfere with the exercise of rights and/or discriminate in violation of ADEA, ADAAA, FMLA, and PHRA;

B) Order Defendant to institute and implement training programs, policies, and practices and programs designed to ensure the Defendant provides proper leave and does not retaliate and/or interfere with those who engage in statutorily protected activity;

C) Order Defendant to make whole Francis Nellis, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, compensate him for lost benefits, and all other affirmative legal and equitable relief necessary to eradicate the effects of its unlawful employment practice;

D) Order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

E) Order Defendant to pay Plaintiff the reasonable attorney's fees and costs and other legal expenses incurred by the Plaintiff in this matter;

F) Order Defendant to remove and expunge, or to cause to be removed or expunged, all negative, discriminatory, and/or defamatory memorandum or other documentation from the Plaintiff's record of employment; and

G) Award the Plaintiff such other legal and equitable relief as the Court deems appropriate and just.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted,

/s/ Sean A. Casey
Sean A. Casey (Pa I.D. 79806)

**SEAN A. CASEY, ATTORNEY AT LAW**
The Pickering Building
960 Penn Avenue, Suite 1001
Pittsburgh, PA 15222
T: (412) 201-9090
F: (412) 281-8481
E: Sean@caseylegal.com