**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANCIS NELLIS,<br><br>Plaintiff,<br><br>v.<br><br>UPMC PRESBYTERIAN SHADYSIDE,<br><br>Defendant. | ) | 2:24-CV-596 |

**MEMORANDUM ORDER**

Plaintiff Francis Nellis brings this employment-discrimination case against his former employer, UPMC. Mr. Nellis was in his 70s, and worked as a technical writer for UPMC, remotely and during COVID. His supervisor at the time was fairly laid back. Around June 2022, this changed. Mr. Nellis and his team began reporting to a new supervisor (Lisa Westwood) who, by some accounts, cracked down on the team and who, by other accounts, was a difficult boss.

After starting, Ms. Westwood began having one-on-one meetings with all of her team members, including Mr. Nellis. Around August 2022, Mr. Nellis began missing meetings, not logging onto Teams, failing to complete tasks, failing to be available during the required hours, and failing to reply to messages. Ms. Westwood immediately began to address Mr. Nellis's performance deficiencies during her one-on-one-meetings with Mr. Nellis. These performance issues were well documented in a log, including often with screen shots. *See, e.g.*, ECF 43-7.

Ms. Westwood spent several months addressing these issues, but ultimately placed Mr. Nellis on a 45-day performance improvement plan or PIP. He couldn't get his performance up to snuff under the PIP, so UPMC terminated his employment around January 2023.

Mr. Nellis claims he was terminated due to age, or disability (sleep apnea), or for taking two FMLA leaves, and that his job environment was otherwise a hostile one. UPMC has moved for summary judgment as to all of these claims. Even construing all evidence in Mr. Nellis's favor, there is insufficient evidence here to get to a jury on any of the claims, so the Court will grant the motion.

## I. Mr. Nellis can't provide sufficient evidence of pretext, which causes Counts I-III to fail.

As to the age, disability, and FMLA claims (Counts I-III), the Court applies the familiar *McDonnell Douglas* burden-shifting test. *See McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). There is some dispute over whether Mr. Nellis has made a prima facie case, but the Court will assume he has done so. UPMC has provided evidence of a legitimate non-discriminatory reason for the termination: several months of attendance and performance issues, resulting in the PIP that Mr. Nellis failed. The question that remains is whether Mr. Nellis has adduced sufficient evidence that this reason was pretextual. The Court finds that he has failed to do so.

As the Third Circuit has stated, to show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. To establish pretext by discrediting the employer's stated reason, the plaintiff must show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence. To establish pretext without discrediting the employer's stated reason, the plaintiff must point to sufficient evidence that, notwithstanding the employer's stated reason for the adverse action, an invidious

discriminatory reason actually caused the action." *See Ortiz v. Cedar Crest Coll.*, 764 F. App'x 257, 259 (3d Cir. 2019) (cleaned up).

Mr. Nellis's attempts to show pretext fall flat.

- He argues that the other co-workers and his former supervisor thought Mr. Nellis performed well; but second-guessing the business judgment of the supervisor who made the termination decision cannot show pretext. *See Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005) (finding "we will not second guess the method an employer uses to evaluate its employees"); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992) ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.").
- He points to "inconsistencies" in Ms. Westwood's deposition testimony, but on close review of that transcript, there are no material contradictions that would undermine the performance issues identified by UPMC.
- He argues that there was unduly suggestive timing here. But there really wasn't. From when Ms. Westwood came on board as the manager, she identified the performance issues. This continued throughout the next several months, and there is nothing suggestive here that jumps out as to timing, when the evidence is viewed as a whole.
- He argues that Ms. Westwood made discriminatory comments, including in the PIP that Mr. Nellis needed to speak more clearly. All of the comments that Mr. Nellis points to are neutral remarks, which neither undermine the performance issues nor establish invidious discrimination.

- He argues that Ms. Westwood brushed him off when he explained that he was falling asleep due to sleep apnea. But the record shows that this was a passing comment (Mr. Nellis never formally made a request for an accommodation through the appropriate third-party HR partner), and the record also shows that Ms. Westwood offered Mr. Nellis a more flexible schedule so he wouldn't fall asleep during or miss meetings.
- He argues that the entire four-person team was either ultimately fired, transferred, or resigned under Ms. Westwood, and that Ms. Westwood needed leadership training. But this doesn't undermine the employer's stated reasons; at most, it shows that Ms. Westwood was a stringent, difficult, or bad manager. *Burns v. McDonough*, No. 2:23-CV-01810-JDW, 2024 WL 4205577, at *1 (E.D. Pa. Sept. 16, 2024) ("Discrimination and poor management are both bad for the workplace, but only one of them is illegal").

In short, Mr. Nellis's performance issues were well documented. He has failed to adduce sufficient evidence to cast those into doubt in such a way to reveal a discriminatory action by UPMC.

## II. There is insufficient evidence of a hostile work environment, which causes Count IV to fail.

At Count IV, Mr. Nellis brings a hostile work environment claim, premised also on age, disability, and FMLA. This claim fails because he has failed to adduce sufficient evidence that his work environment was filled with severe or pervasive discrimination. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (stating that harassment is actionable only if it is "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." (cleaned up)).

Mr. Nellis relies on a few comments made by Ms. Westwood—*i.e.*, "are you sure this is something you still want to do?" and "you are being forgetful" and "you are

slurring your words." ECF 45, at 22. These aren't even stray offensive comments. They are all neutral comments, and go to the very problems Mr. Nellis was displaying and which tied into the performance issues. They do not rise to an actionable level.

***

For the above reasons, Defendant's summary-judgment motion is hereby **GRANTED** (ECF 41). By separate order, judgment will be entered in favor of Defendant as to all claims in the Second Amended Complaint.

DATED this 12th day of November, 2026.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge